# 22-2327

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

CARRÉ SUTTON,

*Plaintiff-Appellant,*

—against—

GÉRALD MARIE, an individual, AKA GÉRALD MARIE CASTELLAC,
TRUDI TAPSCOTT, an individual,

*Defendants-Appellees.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

ELLEN L. NOBLE
ALEXANDRA Z. BRODSKY
ADELE P. KIMMEL
PUBLIC JUSTICE
1620 L Street, NW, Suite 630
Washington, DC 20036
(202) 797-8600

JOHN CLUNE
DANIEL D. WILLIAMS
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, Colorado 80302
(303) 442-6514

DEBBIE GREENBERGER
EMERY CELLI BRINCKERHOFF
    ABADY WARD & MAAZEL, LLP
600 Fifth Avenue 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiff-Appellant
    Carré Sutton*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT ........................................................ 1

INTRODUCTION ................................................................................. 1

STATEMENT OF THE ISSUES............................................................ 4

STATEMENT OF THE CASE............................................................... 4

SUMMARY OF THE ARGUMENT .................................................... 15

STANDARD OF REVIEW .................................................................. 18

ARGUMENT ....................................................................................... 19

    I.     The CVA's Revival Provision Applies to Sutton's Claims
           Because the CVA is the Procedural Law of the Forum .....................19

    II.    Applying the CVA to Sutton's Claims is Not An Extraterritorial
           Application of New York Law...........................................................22

           A.   The CVA governs procedure in New York................................23

           B.   Even if the CVA were substantive law, choice-of-law
                  principles favor its application. .................................................26

    III.   The District Court Erroneously Required a Prosecutable
           Violation of New York Penal Law for the CVA to Apply. ...............31

           A.   Nothing in the CVA's text requires that the underlying
                  sexual offense violate New York penal law or occur within
                  New York. ...............................................................................32

           B.   New York appellate courts have expressly rejected the
                    district court's reading of the statute. ........................................34

           C.   The district court's interpretation of the statute undermines
                    the CVA's remedial purpose. ....................................................37

D.   Even if the CVA only applies where the underlying sexual offense violates New York penal law, that is not grounds for dismissal ............................................................................ 39

IV.   The District Court Improperly Dismissed Claims Against Gérald Marie for Lack of Personal Jurisdiction. ............................... 42

CONCLUSION ................................................................................... 46

CERTIFICATE OF COMPLIANCE ....................................................... 48

CERTIFICATE OF SERVICE .............................................................. 48

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*777388 Ontario Ltd. v. Lencore Acoustics Corp.*,
142 F. Supp. 2d 309 (E.D.N.Y. 2001) ...............................................44

*Anonymous v. Castagnola*,
2022 WL 17171356 (N.Y. App. Div. Nov. 23, 2022)................................. 35-36

*Abbas v. Dixon*,
480 F.3d 636 (2d Cir. 2007) ...............................................41

*ARK265 Doe v. Archdiocese of New York*,
2022 WL 4790507 (N.Y. Sup. Ct. Sep. 26, 2022)......................................21, 22

*Arrowsmith v. United Press Int'l*,
320 F.2d 219 (2d Cir. 1963) ...............................................43

*Babcock v. Jackson*,
191 N.E.2d 279 (N.Y. 1963)...............................................27

*Besser v. E.R. Squibb & Sons, Inc.*,
539 N.Y.S.2d 734 (N.Y. App. Div. 1989) .......................................20

*Blazevska v. Raytheon Aircraft Co.*,
522 F.3d 948 (9th Cir. 2008) ...............................................24

*Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd.*,
655 F. App'x 9 (2d Cir. 2016) ...............................................30

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005) ...............................................37

*Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.*,
1996 WL 437907 (S.D.N.Y. Aug. 2, 1996)......................................44

*Contech Eng'r Sols. LLC v. Element Materials Tech. St. Paul Inc.*,
141 F. Supp. 3d 945 (D. Minn. 2015)...............................................25

iii

*Cruz v. TD Bank, N.A.*,
   711 F.3d 261 (2d Cir. 2013) ..................................................................42

*CutCo Indus., Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986) ..................................................................43

*Env't Def. Fund, Inc. v. Massey*,
   986 F.2d 528 (D.C. Cir. 1993) ...............................................................23

*Farber v. Smolack*,
   229 N.E.2d 36 (N.Y. 1967) ...............................................................27, 28

*Glob. Reinsurance Corp. U.S. Branch v. Equitas Ltd.*,
   969 N.E.2d 187 (N.Y. 2012) ..................................................................26

*Grice v. McMurdy*,
   498 F. Supp. 3d 400 (W.D.N.Y. 2020) ..................................................20

*Guar. Tr. Co. of N.Y. v. York*,
   326 U.S. 99 (1945) ..................................................................................19

*Harris v. City of New York*,
   186 F.3d 243 (2d Cir. 1999) ..................................................................41

*Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*,
   2015 WL 5567073 (E.D.N.Y. Sept. 21, 2015) .......................................27

*Hypefortype Ltd. v. Universal Music Grp., Inc.*,
   2017 WL 11537717 (E.D.N.Y. Sept. 17, 2017) .....................................42

*Jazini v. Nissan Motor Co., Ltd.*,
   148 F.3d 181 (2d Cir. 1998) ..................................................................43

*King v. Ord. of United Com. Travelers of Am.*,
   333 U.S. 153 (1948) ................................................................................37

*MacKendrick v. Newport News Shipbuilding & Dry Dock Co.*,
   302 N.Y.S.2d 124 (Sup. Ct. 1969) ........................................................29

*Martin v. Julius Dierck Equip. Co.*,
   374 N.E.2d 97 (N.Y. 1978) ............................................................. 19-20

*Mei Xing Yu v. Hasaki Rest., Inc.*,
   944 F.3d 395 (2d Cir. 2019) ...............................................................34

*Meserole v. Sony Corp. of Am., Inc.*,
   2009 WL 1403933 (S.D.N.Y. May 19, 2009) ....................................30

*Mestecky v. City of New York*,
   88 N.E.3d 365 (N.Y. 2017).................................................................33

*Miller v. Miller*,
   237 N.E.2d 877 (N.Y. 1968)................................................................28

*Morgan v. Bisorni*,
   475 N.Y.S.2d 98 (N.Y. App. Div. 1984) .............................................39

*Morson v. Kreindler & Kreindler, LLP*,
   814 F. Supp. 2d 220 (E.D.N.Y. 2011) ..........................................20, 27

*Parabit Sys., Inc. v. Synergistics, Inc.*,
   2019 WL 13078616 (E.D.N.Y. Apr. 5, 2019) ....................................42

*People v. Kassebaum*,
   744 N.E.2d 694 (N.Y. 2001)...............................................................40

*People v. Kupprat*,
   160 N.E.2d 38 (N.Y. 1959).................................................................34

*People v. Lin*,
   718 N.Y.S.2d 312 (N.Y. App. Div. 2000) ..........................................41

*People v. Page*,
   149 N.E.3d 905 (N.Y. 2020)................................................................32

*Matter of Peyton v. N.Y.C. Bd. of Stds. & Appeals*,
   164 N.E.3d 253 (N.Y. 2020)................................................................37

*Post v. Burger & Gohlke*,
   216 N.Y. 544, 111 N.E. 351 (N.Y. 1916)...........................................29

*Rutledge v. Rockwells of Bedford, Inc.*,
   613 N.Y.S.2d 179 (N.Y. App. Div. 1994) ...........................................28

v

*S. H. v. Diocese of Brooklyn*,
  167 N.Y.S.3d 171 (N.Y. App. Div. 2022) .....................................................*passim*

*S. H. v. Diocese of Brooklyn*,
  2020 WL 4730433 (N.Y. Sup. Ct. Aug. 14, 2020)..............................................35

*Shapiro v. Syracuse Univ.*,
  173 N.Y.S.3d 769 (N.Y. App. Div. 2022).............................................21, 26, 39

*Slapshot Beverage Co. v. S. Packaging Mach., Inc.*,
  980 F. Supp. 684 (E.D.N.Y. 1997) .....................................................................45

*Soto v. Disney Severance Pay Plan*,
  26 F.4th 114 (2d Cir. 2022) ...............................................................................18

*Speedmark Transp., Inc. v. Mui*,
  778 F. Supp. 2d 439 (S.D.N.Y. 2011) ................................................................30

*Staehr v. Hartford Fin. Servs. Grp.*,
  547 F.3d 406 (2d Cir. 2008) .........................................................................18, 40

*Stafford v. Int'l Harvester Co.*,
  668 F.2d 142 (2d Cir. 1981) ...............................................................................19

*Stuart v. Am. Cyanamid Co.*,
  158 F.3d 622 (2d Cir. 1998) ...........................................................19, 20, 37, 39

*Sullivan v. McFetridge*,
  55 N.Y.S.2d 511 (Sup. Ct. 1945).......................................................................24

*Sutton v. Marie*,
  2022 WL 3904100 (S.D.N.Y. Aug. 30, 2022)...........................................*passim*

*United States v. Fernandez-Antonia*,
  278 F.3d 150 (2d Cir. 2002) ...............................................................................34

*Whiteside v. Hover-Davis*,
  995 F.3d 315 (2d Cir. 2021) ...............................................................................39

**Statutes & Regulations**

18 U.S.C. § 1961 ......................................................................................................33

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. § 1332 ................................................................................1

C.P.L.R. 214-g ........................................................................*passim*

C.P.L.R. § 208(b) ..............................................................................11

C.P.L.R. § 302 ...................................................................................44

C.P.L.R. § 3211(e) ............................................................................42

Fed. R. Civ. P. 4(f)(1) ......................................................................14

Fed. R. Civ. P. 12(b)(6) ...............................................................18, 39

Fed. R. Civ. P. 8(a) ...........................................................................43

N.Y. Crim. Proc. Law § 20.20 .........................................................40

N.Y. Crim. Proc. Law § 30.10(f) .....................................................11

N.Y. Penal Law § 130 .............................................................*passim*

N.Y. Penal Law § 30.00 ....................................................................36

## Other Authorities

53 C.J.S. Limitations of Actions § 27 ..............................................19

4 Charles Wright & Arthur Miller, Federal Practice and Procedure (3d
    ed. 2007) ......................................................................................45

McKinney's Cons. Laws of N.Y., Book 1, Statutes ...............................23

New York Bill Jacket, 2019 S.B. 2440 ......................................*passim*

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the three parties to the action are domiciled in New York, Colorado, and France respectively, resulting in complete diversity of citizenship, and the matter in controversy is more than seventy-five thousand dollars.

The district court granted Defendant-Appellee Trudi Tapscott's motion to dismiss Plaintiff Carré Sutton's claims in full and sua sponte dismissed claims against Defendant Gérald Marie as well. J.A. 33. The court entered final judgment dismissing the entire complaint on August 31, 2022. J.A. 5. This final judgment adjudicated all of Sutton's claims. *Id.* Sutton then filed a timely notice of appeal on September 28, 2022. J.A. 34. This Court has jurisdiction over this appeal from a final judgment under 28 U.S.C. § 1291.[1]

## INTRODUCTION

New York enacted the Child Victims Act (CVA) to give survivors of childhood sexual abuse an opportunity to seek justice and hold perpetrators and their enablers accountable. The law creates a two- year "look-back" window during which survivors are allowed to bring otherwise time-barred civil claims related to their sexual abuse.

---

[1] Throughout this Brief, the Joint Appendix is cited as J.A. X.

1

Relying on the new law, Carré Sutton, an accomplished supermodel and actress, filed suit against former executives of Elite Modeling for the sexual abuse she suffered working as a child model in the 1980s. As a 17-year-old child runaway, Sutton was recruited by Elite. She was housed in a small New York apartment she shared with five other teen models and given a small stipend which barely covered food. New York's Elite executives then intentionally and negligently sent Sutton from her New York home to Paris to live with the head of Elite Europe, a well-known predator with a penchant for sexually abusing vulnerable and underaged models in his care. Sutton was repeatedly raped by him for months.

Sutton has now filed a civil action pursuant to the Child Victims Act, alleging various common law claims against Trudi Tapscott, the New York Elite executive who was responsible for the child models and arranged for Sutton to relocate from New York to Paris to live in a predator's apartment, as well as Gérald Marie, the head of Elite Europe who had Sutton flown from New York for the purpose of sexually abusing her. The district court dismissed Sutton's complaint as time-barred, holding that the CVA does not apply because Sutton was raped in Paris, not New York.

The district court decision conflicts with New York's longstanding common law principle that the law of the forum governs matters of procedure, and that statutes of limitations are procedural. Because the forum is New York, New York's statutes

2

of limitations, including the CVA, apply. There is one exception to this rule: New York's borrowing statute, which outlines certain circumstances in which another state's shorter statute of limitations might apply. But that borrowing statute applies only to nonresidents. Here, because Sutton was a New York resident at the time her claims arose, New York procedural law, including the CVA, applies. Contrary to the district court's analysis, there is nothing extraterritorial about applying the CVA to Sutton's claims because the CVA governs procedure for New York cases, and this action was filed in federal court in New York.

The district court decision also rests on a fundamental misreading of the statute. The district court concluded that the CVA only applies if the sexual offense itself occurred in New York because the CVA only revives civil claims for injuries from a sexual offense as defined in § 130 of New York penal law, and conduct outside of New York does not violate New York penal law. But New York appellate courts have flatly rejected this interpretation of the CVA as inconsistent with its text; the CVA only references § 130 of the penal law to define the *type of conduct* that constitutes a sexual offense and does not require a prosecutable violation of New York penal law.

Because the district court failed to recognize that the CVA is the procedural law of the forum and misinterpreted the text of the CVA, this Court should reverse and remand for further proceedings.

3

## STATEMENT OF THE ISSUES

1.     Does the New York Child Victims Act's revival provision, C.P.L.R. § 214-g, apply to Sutton's claims?

2.     Did the district court err in dismissing claims against defendant Gérald Marie for failure to allege personal jurisdiction?

## STATEMENT OF THE CASE

This appeal is about the applicability of the New York Child Victims Act (CVA), which created a two-year "revival" window for plaintiffs to file otherwise time-barred claims that seek to recover for injuries suffered as a result of a sexual offense against a minor. The question on appeal is whether the CVA applies even if the underlying sexual offense took place outside of New York where the victim was a New York resident. This appeal also raises the question of whether a plaintiff must explain, in the complaint, how the court has personal jurisdiction over each defendant.

The underlying case is brought by plaintiff Carré Sutton, a former child model, who seeks to hold former Elite Modeling executive Trudi Tapscott and the former head of Elite Modeling Europe Gérald Marie accountable for the sex trafficking and abuse she suffered as a minor in the mid-1980s. Relying on the CVA's revival of otherwise time-barred claims, Sutton filed suit alleging fraud, intentional infliction of emotional distress, and negligence against Tapscott, and fraud, intentional

4

infliction of emotional distress, and conspiracy to commit sexual misconduct against Marie. J.A. 6-23.

In the proceedings below, Judge Mary Kay Vyskocil granted Tapscott's motion to dismiss on the grounds that the CVA does not apply and plaintiff's claims are therefore time-barred. *See Sutton v. Marie*, No. 1:21-CV-06787 (MKV), 2022 WL 3904100, at *1 (S.D.N.Y. Aug. 30, 2022). The district court also sua sponte dismissed all claims against Marie, who has not yet entered an appearance in this action, on the grounds that those claims are similarly time-barred and that the complaint fails to allege that the court has personal jurisdiction over him. *Id.* Sutton appeals.

**The Rise of Elite Modeling and its Sexual Exploitation of Children**

Businessman and self-professed playboy John Casablancas founded a sex-forward modeling agency called "Elite" in 1972. J.A. 11. Elite moved its headquarters to New York in 1977, and New York remained the company's permanent homebase. J.A. 11-12. Elite New York quickly grew to become one of the most prominent modeling agencies in the world. J.A. 12.

But Elite had a dark side. Some of its male executives used their unlimited access to young, vulnerable women to commit heinous crimes and profit financially without fear of repercussion. *Id.* Casablancas had an affinity for—and sexually abused—child models. J.A. 10-11. Indeed, his grooming and statutory rape of a 14-

year-old child model, Stephanie Seymour, was well known. J.A. 11. Casablancas also claimed that virgin models had to be "broken in" by Elite executives and "devirginized." *Id.*

In 1985, Gérald Marie joined Elite as a high-level executive and partner to Casablancas. J.A. 12. Elite hired him despite knowing his reputation for beating up and raping his models. J.A. 14-15. Marie's policy was "if you want to work with me, you have to fuck me," and he was known within the industry for flying models into Paris on the pretext of signing a contract with his agency, only to sexually assault them on their arrival and send them home with no contract. J.A. 14. As one Elite executive put it, everyone knew Marie was a sexual predator; they just didn't talk about it. J.A. 15.

Casablancas and Marie turned sex with young models into a competition: the younger the models were, the more points the men would receive. J.A. 15-16. While Marie worked out of Paris, France as head of the Elite Europe office, he would use New York-based modeling competitions to scout young girls for sex. J.A. 15. The average age of contestants was fifteen. *Id.* Marie also trafficked child models from New York to Paris for the purpose of raping them. J.A. 9, 15. Casablancas and Marie used their positions of power to traffic, exploit, and sexually abuse the young models they oversaw. J.A. 13.

Meanwhile, child models were completely dependent on modeling agencies like Elite. J.A. 12-13. They were housed in small quarters called "model apartments" where they were charged five-times the amount of actual rent, ensuring they were always broke and dependent on the agency for support. *Id.* Away from their homes and parents, child models relied on the agency for food and continued shelter. Many couldn't speak the local language, further isolating them when working in foreign countries. J.A. 13. Trapped with no money, and often in a foreign country, the child models did what they were told. *Id.*

**The Trafficking and Sexual Abuse of Carré Sutton**

Sutton was a 16-year-old child runaway in Northern California in 1985. J.A. 16. While homeless, Sutton was scouted and connected to a San Francisco modeling agency with ties to Casablancas. J.A. 16-17. That agency shared her photos with Casablancas who immediately asked for her to be sent to New York. *Id.* Even though Sutton was underage and her parents had not consented, Casablancas paid for her to move to New York and live in Elite's "model apartment" in Manhattan. *Id.*

The Elite executive primarily responsible for Sutton's well-being was Trudi Tapscott, who had joined the company in 1983. J.A. 9-10. Tapscott was a New York-based agent, scout, and high-level executive with a close relationship to Casablancas. J.A. 9-10, 17. She oversaw all new models in New York and was responsible for

7

their housing, transportation to jobs, food, and other basic needs. *Id.* She was effectively a housemother for the child models, including 16-year-old Sutton. *Id.*

After a few months of working in New York, Casablancas called Sutton into his office and told her she wasn't making the cut. J.A. 17. He said that he would give her one more week to get good photographs, but that if she didn't, she'd have to move on. *Id.* He left the office and Sutton began to cry. *Id.* Tapscott entered and told her that it was okay if she didn't make it at Elite New York because she would be sent to one of Elite Europe's offices. *Id.*

Before the week was out, Tapscott informed Sutton that Elite was in fact transferring her from New York to Paris to further her career and that she has been chosen by the head of Elite Europe to live in his apartment with him. *Id.* Sutton felt that this was a very good sign and that perhaps her career was not over. *Id.* Tapscott and Marie had made the decision to send Sutton from New York to Paris with the consent of Casablancas. J.A. 18. Sutton was sent on a short-term visa, likely a tourist visa, without any parental consent. *Id.* She intended to later return to New York and continue her career as a model. *Id.*

But after arriving in Paris in the spring of 1986, Sutton quickly learned that she had not been sent from New York to further her career but for something altogether different. *Id.* When she first met with Marie in his office, he warned her

8

that she must be obedient to his commands. *Id.* He slapped her on her buttocks and told her "[o]n my dime, I don't want your opinion Carré. I want your obedience." *Id.*

One night, a drunk Marie entered Sutton's room, ripped her clothes off, and raped her. J.A. 18-19. After that, Sutton became distant from Marie but continued to obey him since she needed him to survive in Paris. J.A. 19. Every time Marie's girlfriend would leave the apartment, Marie expected Sutton to let him rape her. *Id.* He raped her repeatedly for months. *Id.*

During this time, Marie also trafficked Sutton to wealthy men throughout Europe for purposes wholly unrelated to modeling. *Id.* On one such occasion, Marie sent Sutton to the home of an Italian billionaire where she thought she was to do a photo shoot. *Id.* When she arrived, there was no shoot, only a lavish party where the billionaire attempted to rape her. *Id.*

Eventually, Sutton started more aggressively resisting the abuse. *Id.* When Marie tried coming into her room to rape her, she repeatedly said no. *Id.* He got angry, kicked her out of his apartment, and had her transferred to Milan. *Id.*

In June of 1986, Tapscott shared a memo with Casablancas about how Marie was sexually abusing models, including Sutton. J.A. 15. In response, Casablancas did not express concern about the abuse—he just told Marie to be more cautious. *Id.* Neither Tapscott nor Casablancas took further action to stop the abuse and protect the models that Marie oversaw. *Id.*

9

A few years later, at Marie's home in Ibiza, Spain, Tapscott told Marie and Casablancas to leave the 13- and 14-year-old girls alone, J.A. 19, implying that the sexual abuse of 15, 16, and 17-year-old girls was not a concern. Marie responded that he and Casablancas "are men. We have needs," and Casablancas told Tapscott to "relax." *Id.* Tapscott continued to work for Casablancas and Marie, justifying the sexual abuse on the theory that "no one ever did anything that they didn't want to." J.A. 19-20.

It was not until a 2020 interview that Tapscott admitted that she has "tremendous regret about not doing more at the time." J.A. 20. Tapscott had the ability to stop the trafficking and abuse that was occurring through Elite's New York office, but she chose not to. *Id.*

**New York's Child Victims Act**

New York enacted the CVA to ensure that survivors of child sexual abuse have the opportunity to seek justice against their abusers and those who enabled the abuse. Signed into law on February 14, 2019, the CVA revived childhood sexual abuse victims' civil claims, which otherwise would have been barred by statutes of limitations, for one year, from 2019 to 2020. *See* New York Civil Practice Law and Rules ("C.P.L.R.") § 214-g. The "look-back" window was later extended to two years. *See* 2020 Sess. Law News of N.Y. Ch. 130 (S. 7082). The CVA also extended

the civil and criminal statute of limitations for child sexual assault moving forward. *See* C.P.L.R. § 208(b); N.Y. Crim. Proc. Law § 30.10(f).

The New York legislature enacted the law in recognition that it often takes victims of childhood sexual abuse "years or decades . . . to confront their perpetrators and the institutions that enabled them." Resolution in Support of Child Victims Act, New York Bill Jacket, 2019 S.B. 2440, Ch. 11 at 24. New York law previously required survivors of child sex abuse "to file civil actions or criminal charges against their abusers by the age of 23 at most, long before most survivors report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average." Introducer's Mem. in Support, New York Bill Jacket, 2019 S.B. 2440, Ch. 11 at 7. As a result, "thousands of survivors [have been] unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety." *Id.* The New York legislature enacted the CVA to "finally allow justice for past and future survivors of child sexual abuse, help the public identify hidden child predators through civil litigation discovery, and shift the significant and lasting costs of child sexual abuse to the responsible parties." *Id.*

The CVA's revival provision at issue states:

Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or

11

condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age. . . is hereby revived.

C.P.L.R. § 214-g.[2] The referenced portion of the New York penal law, in turn, lists and defines several forms of prohibited sexual abuse. N.Y. Penal Law § 130. These include sexual misconduct, *id.* § 130.20; rape, *id.* §§ 130.25, 130.30, 130.35; forcible touching, *id.* § 130.52; and predatory sexual assault against a child, *id.* § 130.96. Neither the CVA nor the referenced portion of the New York penal law confine their reach to abuse that occurs in New York. *See* C.P.L.R. § 214-g; N.Y. Penal Law § 130.

The law further provides that actions revived by the CVA must be brought in a two-year window from August 14, 2019 to August 14, 2021. C.P.L.R. § 214-g. It also states that "to the extent that the acts alleged in such action *are of the type described* in subdivision one of section 130.30 of the penal law or subdivision one of section 130.45 of the penal law, the affirmative defenses set forth, respectively, in the closing paragraph of such sections of the penal law shall apply." *Id.* (emphasis added). The only affirmative defense set forth in those sections is that the defendant

---

[2] The CVA also applies if the action is for injuries caused by "incest as defined in sections 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in section 263.05 of the penal law, or a predecessor statute that prohibited such conduct at the time of the act. . . ." C.P.L.R. 214-g. But relevant to this appeal is the cross-reference to the penal law's definition of a sexual offense.

12

is not liable for the offense if they were less than four years older than the victim at the time of the act. *See* N.Y. Penal Law §§ 130.30, 130.45.

**Proceedings Below**

Within the CVA's two-year window to bring revived claims, Sutton filed suit against Tapscott and Marie. Sutton claims that both Tapscott and Marie fraudulently induced her to leave New York, representing the trip to Paris as a career development opportunity when in reality Sutton was being sent to live in the home of a known child predator so that he could repeatedly rape her. *See* J.A. 20-21. Sutton also claims that Tapscott negligently breached a duty of care she owed Sutton as her caretaker and employer in New York, J.A. 21, and that both Tapscott and Marie committed intentional infliction of emotional distress, J.A. 22. Finally, Sutton brings a claim against Marie for conspiracy to commit a sexual offense. J.A. 22-23. She alleges that Marie and Casablancas reached an agreement to send her to Paris to be sexually abused. *See id.* [3]

In response to the lawsuit, Tapscott, who is still a resident of New York and now an owner of her own New York modeling agency, J.A. 10, moved to dismiss the complaint. *See* Mem. in Supp. of Mot. to Dismiss, Doc. 25-4, *Sutton v. Marie*, No. 1:21-CV-06787 (S.D.N.Y.). Tapscott argued that the CVA does not apply and

---

[3] Casablancas is deceased and therefore not a defendant in this lawsuit, though he is alleged to have been a part of the conspiracy. J.A. 10.

13

Sutton's claims are therefore time-barred under New York law. *Id.* at 8-14. She also argued that plaintiff failed to state a claim. *Id.* at 14-20.

Sutton opposed the motion, arguing that it would be improper to dismiss the case as untimely since Sutton had no obligation to plead facts in anticipation of an affirmative defense. *See* Mem. in Opp'n to Def.'s Mot. to Dismiss, Doc. 28 at 6-8, *Sutton v. Marie*, No. 1:21-CV-06787 (S.D.N.Y.). Sutton also argued that the CVA revives her claims because New York's borrowing statute does not apply, nearly every event relevant to her claims except for the abuse occurred in New York while she was a New York resident, and nothing in the text of the CVA requires that the underlying sexual offense occur in New York. *Id.* at 8-14. Sutton also argued her claims were sufficiently pled. *Id.* at 14-22.

Throughout the proceedings below, Marie never made an appearance. Sutton is still attempting to serve him under the Hague Convention as provided in Fed. R. Civ. P. 4(f)(1). J.A. 24.

The district court granted Tapscott's motion to dismiss on the grounds that Sutton's claims are time-barred. J.A. 24. The court reasoned that the CVA does not apply to revive Sutton's claims because her claims are for injuries caused by a sexual offense that occurred in Paris, France and the CVA does not apply extraterritorially. J.A. 28-30. The court also reasoned that the CVA, per its text, only revives claims premised on sexual offenses that violate New York penal law, and that New York

14

penal law does not apply to conduct outside of New York. J.A. 30-31. In addition to dismissing the claims against Tapscott, the district court sua sponte dismissed the claims against Marie on the grounds that (1) they are time-barred for the same reasons the claims against Tapscott are time-barred, and (2) that Sutton does not allege how the court has personal jurisdiction over Marie, an apparent resident of Spain. J.A. 32-33.

Sutton appeals the dismissal of her case.

## SUMMARY OF THE ARGUMENT

Defendants are not entitled to dismissal of Sutton's complaint on either the grounds that her claims are time-barred or that the court lacks personal jurisdiction over Marie.

**I.** The CVA applies because it is the procedural law of the forum. It is well settled under New York law that procedural matters are governed by the law of the forum and that statutes of limitations are a procedural matter. This means New York's statutes of limitations, as amended by the CVA, apply to cases litigated in New York, even if another state's laws might govern the substantive causes of action. The only exception to this rule is New York's borrowing statute, which outlines certain circumstances in which another state's shorter statute of limitations might apply. But that borrowing statute applies only to nonresidents. For New York residents like Sutton, New York's statutes of limitations, including the CVA, apply.

Pursuant to this longstanding common law rule that matters of procedure are governed by the law of the forum, New York courts, including a New York appellate court, have already applied the CVA to cases, like this one, where the plaintiff was a New York resident and the underlying sexual offense occurred outside of New York.

**II.** Contrary to the district court's analysis, applying the CVA to revive Sutton's claims does not involve any extraterritorial application of New York law. The CVA is a procedural rule that applies to cases that have properly been brought in New York; it is not a substantive law that prohibits conduct or creates a cause of action beyond New York's borders. Even if it were a substantive law, applying the revival statute still would not be an impermissible extraterritorial application of New York law because much of defendants' wrongful conduct took place in New York, injuring a New York resident, and New York's choice-of-law principles favor application of the CVA.

**III**. The district court's decision also rests on a misinterpretation of the CVA's text. In response to Sutton's argument that much of the wrongful conduct that forms the basis of her claims occurred in New York, the district court stated that the sexual offense itself must have occurred in New York. The court reasoned that the CVA, per its text, only applies where the civil claims arise from a sexual offense that

16

violates New York penal law, and that only conduct within New York can be prosecuted under New York penal law. The court was wrong on both counts.

**III.A-C.** The text of the statute does not require any *prosecutable violation* of New York penal law—it just references the definition of sexual offense in New York penal law to identify the *type of conduct* from which the civil claims must arise. Neither the text of the CVA nor the penal provision it cites requires the sexual offense conduct to be prosecutable under New York law. Every New York appellate court to consider this issue agrees and has expressly rejected the district court's interpretation. Indeed, the district court's reading of the statute undermines the very purpose of the CVA.

**III.D.** Even if the CVA did require an underlying violation of certain New York penal laws, that is not grounds for dismissal. Tapscott's argument that Sutton's claims are time-barred is an affirmative defense, and a district court can only grant a motion to dismiss on an affirmative defense if that defense is apparent from the face of the complaint. Here, it is not clear from the face of the complaint that New York could not have criminally charged anyone for the sexual abuse Sutton suffered in Paris.

**IV.** The district court also erred by sua sponte dismissing the complaint against Marie on the ground that Sutton failed to allege how the court has personal jurisdiction over Marie. Plaintiffs are not required to allege personal jurisdiction over

17

each defendant in their complaint. They are only required to establish personal jurisdiction, through pleadings or affidavits, in response to a motion to dismiss for lack of personal jurisdiction—a waivable defense. No such motion was ever filed. Nonetheless, there are two grounds for asserting personal jurisdiction over Marie: (1) he was engaged in a conspiracy with Casablancas who took overt acts in furtherance of the conspiracy within New York, and (2) he engaged in significant business transactions within New York that gave rise to Sutton's claims. Thus, the district court was wrong to dismiss the complaint against Marie on this alternative ground never raised or briefed by the parties below.

## STANDARD OF REVIEW

The Court "review[s] *de novo* the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 120 (2d Cir. 2022). The Court "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." *Id.* Furthermore, where a statute of limitations defense is decided on a Rule 12(b)(6) motion, the affirmative defense that plaintiff's claims are time-barred must be "clear from the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008).

**ARGUMENT**

## I. The CVA's Revival Provision Applies to Sutton's Claims Because the CVA is the Procedural Law of the Forum.

New York's statute of limitations, as modified by the CVA's revival provision, governs all of Sutton's claims because in New York the law of the forum governs matters of procedure. "Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York . . . statutes of limitations." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998).

Under New York common-law rules, "matters of procedure are governed by the law of the forum" and "Statutes of Limitations have traditionally been characterized as procedural" because they "pertain[] to the remedy rather than the right." *Martin v. Julius Dierck Equip. Co.*, 374 N.E.2d 97, 99 (N.Y. 1978).[4] Accordingly, "the Statute of Limitations of the forum rather than that of the jurisdiction where the cause of action accrued governs the timeliness of a cause of action." *Id.*; *see also* 53 C.J.S. Limitations of Actions § 27 ("[T]he general rule is that in respect of the limitation of actions the law of the forum governs"). Thus,

---

[4] This state law analysis of whether a law is procedural or substantive should not be confused with the *Erie* inquiry that applies when determining whether a federal court with diversity jurisdiction should apply a particular state law. A state statute of limitations is outcome determinative and thus, per *Erie*, governs a federal court with diversity jurisdiction operating within that state. *See Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945). It is "immaterial whether statutes of limitation are characterized either as 'substantive' or 'procedural' in State court opinions." *Id.* New York law applies to this dispute, as the district court recognized. *See* J.A. 29 n.4.

19

where a case is litigated in New York, "New York will apply its own statute of limitations even though the injury which gave rise to the action occurs in another state." *Stafford v. Int'l Harvester Co.*, 668 F.2d 142, 147 (2d Cir. 1981) (citing *Martin*, 374 N.E.2d at 99); *accord Stuart*, 158 F.3d at 627; *Grice v. McMurdy*, 498 F. Supp. 3d 400, 413 (W.D.N.Y. 2020); *Morson v. Kreindler & Kreindler, LLP*, 814 F. Supp. 2d 220, 225 (E.D.N.Y. 2011).

To guard against forum shopping, New York's borrowing statute creates an exception to the common law rule that matters of procedure are governed by the law of the forum. But that exception does not apply here. The borrowing statute provides that "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." *Stuart*, 158 F.3d at 627 (citing C.P.L.R. § 202). However, the borrowing statute does not apply if the plaintiff "was a New York resident at the time her cause of action accrued." *Besser v. E.R. Squibb & Sons, Inc.*, 539 N.Y.S.2d 734, 739 (N.Y. App. Div. 1989), *aff'd,* 552 N.E.2d 171 (N.Y. 1990). Sutton was a New York resident at the time her claims accrued, so the borrowing statute does not apply. *See* J.A. 7, 18. (alleging Sutton was a resident of New York in 1986 who traveled to Paris on a short-term visa and "intended to later return").

20

The CVA's revival provision is a procedural law that pertains to the remedy rather than the right, by "amend[ing] the civil practice law and rules, in relation to the statute of limitations for civil actions related to a sexual offense committed against a child." 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440). Because there is a longstanding New York common law rule that the law of the forum governs matters of procedure, and the CVA—like a statute of limitations—is a procedural law, the CVA applies.

New York courts agree. Accordingly, they have applied the CVA in cases, like this one, where the plaintiff was a New York resident but the sexual offense occurred outside of New York. In *Shapiro v. Syracuse University*, for example, plaintiffs filed suit in New York pursuant to the CVA, alleging claims that "arise from sexual abuse that occurred in Massachusetts at Camp Greylock for Boys in the 1970s." 173 N.Y.S.3d 769, 773 (N.Y. App. Div. 2022). The New York appellate court held that the CVA applied to the claims of the plaintiffs that were New York residents. The court explained that the revival provision was "properly regarded as a statute of limitations" and that "pursuant to the 'resident exception' of the borrowing statute, a claim that accrues in favor of a New York resident will be governed by the New York statute of limitations regardless of where the claim accrued." *Id.* at 773. (citation omitted). Therefore, "the CVA revival statute applies." *Id.* at 774.

21

Relying on *Shapiro*, another New York court held that the CVA applies where the plaintiff was a New York resident, even if the sexual offense occurred outside of New York. *See ARK265 Doe v. Archdiocese of New York*, No. 950297/2020, 2022 WL 4790507, at *3 (N.Y. Sup. Ct. Sep. 26, 2022). The New York resident plaintiff had filed suit against the Archdiocese of New York for injuries suffered from the Archdiocese's cleric's sexual abuse of the plaintiff in Virginia. *Id.* Recognizing that "a claim that accrues in favor of a New York resident will be governed by the New York statute of limitations regardless of where the claim accrued," the court applied the CVA to revive the New York resident plaintiff's claims. *Id.*

In sum, because Sutton brought this case in New York, a forum that no party has challenged as improper, New York procedural laws, including the CVA, apply and revive Sutton's claims against both Tapscott and Marie. This should be the end of the inquiry.

## II. Applying the CVA to Sutton's Claims is Not an Extraterritorial Application of New York Law.

Contrary to the district court's analysis, application of the CVA does not involve the extraterritorial application of New York law. The CVA is a procedural rule that governs cases that have properly been brought in New York; it is not a substantive law that attempts to prohibit or authorize conduct beyond New York's borders. And even if the CVA were substantive, applying the CVA is not an impermissible extraterritorial application of New York law because much of the

wrongful conduct occurred in New York and New York's choice-of-law principles favor application of New York law.

## A. The CVA governs procedure in New York.

Applying the CVA to Sutton's claims is not an extraterritorial application of New York law because the CVA is a procedural rule that applies to cases that have properly been brought in New York; it is not a substantive law that prohibits conduct or creates a cause of action beyond New York's borders. An extraterritorial application of law is the extension of a state's lawmaking power beyond its political jurisdiction. *See* McKinney's Cons. Laws of N.Y., Book 1, Statutes § 149; *see also Env't Def. Fund, Inc. v. Massey*, 986 F.2d 528, 531 (D.C. Cir. 1993) (explaining, in context of the federal presumption against extraterritoriality, that "[b]y definition, an extraterritorial application of a statute involves the regulation of conduct beyond U.S. borders"). Applying the CVA to Sutton's claims does not regulate conduct beyond New York's boundaries because it does not create a cause of action or otherwise ascribe liability. It just governs the proceeding of an action that was properly brought in New York. It is no different than the application of New York's personal jurisdiction rules or New York's choice of law rules over an action that was brought in New York but may arise from conduct that occurred outside of New York. Thus, application of the CVA does not implicate the presumption against extraterritorial application of state law.

23

This is a well-settled issue. As explained in Part I, New York has long applied its own procedural laws to cases litigated in New York, even if the cause of action arises outside of New York or is governed by another state's laws. *See supra* Part I. Application of that long-standing common law rule does not raise extraterritoriality concerns because those procedural laws govern proceedings *in New York*. *See Sullivan v. McFetridge,* 55 N.Y.S.2d 511, 516 (Sup. Ct. 1945) ("[E]ach state regulates its own jurisprudence in its own way and procedural statutes are not given extraterritorial effect.").

The district court's decision in *Contech Engineered Solutions LLC v. Element Materials Tech. St. Paul Inc.*, 141 F. Supp. 3d 945 (D. Minn. 2015), illustrates the point. There, the court held that applying Minnesota's statute of limitations to claims alleging negligence and breach of contract in the inspection of a bridge in Michigan did not violate the presumption against extraterritorial application of Minnesota law because the statute of limitations "does not impose Minnesota law on sister states or regulate conduct outside of Minnesota. Instead, the statute simply serves to regulate access to Minnesota courts." *Id.* at 952. Likewise, here, application of the CVA only serves to regulate access to New York courts—not conduct or commerce outside of New York. "[I]f a statute does not regulate conduct occurring abroad, then the presumption against extraterritoriality is not even implicated." *Blazevska v. Raytheon Aircraft Co.*, 522 F.3d 948, 955 (9th Cir. 2008).

24

In response, Tapscott will likely point to *S. H. v. Diocese of Brooklyn*, 167 N.Y.S.3d 171 (N.Y. App. Div. 2022), where a New York appellate court held that the CVA does not apply extraterritorially to nonresident plaintiffs where the alleged acts of abuse were perpetrated by a nonresident outside New York. But in that case, the plaintiff was not a New York resident, so the briefing was focused entirely on whether New York's borrowing statute applied despite the CVA's revival provision. *See* Def.'s Mot. to Dismiss, *S. H. v. Diocese of Brooklyn*, 2020 WL 13451036 (N.Y. Sup.).[5] The briefing did not focus on what statute of limitations would apply if New York's borrowing statute did not apply, and the court did not need to confront that issue because it held that the borrowing statute *did* apply. *See S. H.*, 167 N.Y.S.3d at 180. The court's analysis of the extraterritorial application of the CVA was also closely tethered to the fact that the plaintiff was not a New York resident. The court repeatedly emphasized that "the legislature intended that the CVA provide relief to New York residents alone," *id.* at 176-77, which in this case cuts in favor of applying the CVA to Sutton's claims since she was a New York resident.

Nonetheless, to the extent that *S. H.* suggests that a court applying the procedural law of the forum is violating the presumption against extraterritoriality,

---

[5] The briefing also addressed whether the CVA's reference to New York penal law requires that the underlying sexual offense occur in New York—an argument that the appellate court rejected, *see S. H.*, 167 N.Y.S.3d at 177, and that this brief addresses in Part III.

25

it is in conflict with the appellate court decision in *Shapiro*, 173 N.Y.S.3d at 773, and decades of New York case law applying New York's statutes of limitations to claims that arise outside of New York without assessing extraterritoriality concerns. *See supra* at 21 (citing cases). *Shapiro*, the only appellate court decision assessing the applicability of the CVA where the plaintiff *was* a New York resident and the abuse occurred outside of New York, should control this court's analysis.

Because New York statutes of limitations, including the CVA, govern court proceedings in New York, there is no extraterritorial application of state law.

## B. Even if the CVA were substantive law, choice-of-law principles favor its application.

Even if the CVA were substantive law, applying the CVA to revive Sutton's claims would not be an impermissible extraterritorial application of state law. New York courts have held that New York substantive law does not apply to "purely extraterritorial" conduct where there is "no particular New York orientation." *Glob. Reinsurance Corp. U.S. Branch v. Equitas Ltd.*, 969 N.E.2d 187, 194 (N.Y. 2012). But where, as here, a case arises out of events that occurred both in and outside of New York, choice-of-law principles govern the application of New York law. New York courts have shifted away from a "bright-line rule against application of the [New York law] to any conduct taking place outside New York state," and towards "a more flexible analysis" where "New York's choice-of-law principles govern." *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, No. 13-CV-6789 CBA LB, 2015

26

WL 5567073, at *9 (E.D.N.Y. Sept. 21, 2015) (characterizing New York Court of Appeals decision in *Padula v. Lilam Properties Corp.*, 644 N.E.2d 1001 (N.Y. 1994)).

In assessing whether to apply New York law to a tort action, New York courts apply "the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented." *Babcock v. Jackson*, 191 N.E.2d 279, 285 (N.Y. 1963). This choice-of-law doctrine was established to replace the traditional, more rigid rule that New York law would not apply where a tort victim was injured outside of New York. *See id.; see also Farber v. Smolack*, 229 N.E.2d 36, 39-40 (N.Y. 1967) (expressly overturning earlier cases that declined to give extraterritorial effect to New York laws where a tort victim is injured outside of New York).

For the reasons explained in Part II.A, this Court should not conduct a choice-of-law analysis to determine if applying the CVA would be an improper extraterritorial application of New York law. "Choice of law provisions typically apply to only substantive issues and statutes of limitations are considered procedural because they are deemed as pertaining to the remedy rather than the right." *Morson*, 814 F. Supp. 2d at 225 (quoting *Portfolio Recovery Assoc., LLC v. King*, 927 N.E.2d 1059 (N.Y. 2010)).

But to the extent this Court disagrees, New York's substantive choice-of-law principles would still favor application of the CVA. New York has the strongest

27

interest in the claims against Tapscott because Tapscott's alleged wrongful conduct occurred entirely within New York. "The location of the [injury] is of no moment, as the determinative factor is the place where the [defendant's] impermissible act occurred." *Rutledge v. Rockwells of Bedford, Inc.*, 613 N.Y.S.2d 179, 181 (N.Y. App. Div. 1994) (applying New York's Dram Shop Act "where the sale of the intoxicating beverage occurs in New York, even though the resulting injury takes place out-of-state"); *see also Farber*, 229 N.E.2d at 39 (applying New York law to "transitory tort arising entirely from New York relationships" even though the fatal car accident occurred outside of New York).

New York also has the strongest interest in the claims against Tapscott because both Tapscott and Sutton were New York residents at the time (Tapscott remains a New York resident today). Even in cases where the defendant's wrongful conduct occurred outside of New York, New York courts have still applied New York law where both the plaintiff and defendant are New York residents. *See Miller v. Miller*, 237 N.E.2d 877, 880-83 (N.Y. 1968) (applying New York law in death action for benefit of resident wife and children of New York decedent against New York resident defendants, although the accident took place in Maine and the defendants resided there at time of the accident).

Finally, New York has a significant interest in the claims because Tapscott was Sutton's employer in New York and directed her to go to Paris as part of her

28

job. New York courts have long applied New York law where New York employees were injured while on temporary work assignments outside of the state. *See MacKendrick v. Newport News Shipbuilding & Dry Dock Co.*, 302 N.Y.S.2d 124, 141 (Sup. Ct. 1969) (holding that the substantive law of New York—not Virginia—governed action for wrongful death of welder who was domiciled in New York but died in an industrial accident in Virginia while on a temporary work assignment from his home office in New York); *Post v. Burger & Gohlke*, 216 N.Y. 544, 554–55, 111 N.E. 351 (N.Y. 1916) (applying New York workers' compensation laws where New York resident was sent by his employer to perform work in another state and injured there).

Because Tapscott's wrongful conduct took place in New York, both Sutton and Tapscott were New York residents, and the claims arise from an employment relationship based out of New York, there is nothing extraterritorial about applying New York's CVA to Sutton's claims against Tapscott.

With respect to the claims against Marie, New York likely has the most interest in the matter because Marie was engaged in a conspiracy to transport a New York resident, Sutton, from New York under false pretenses for the purpose of sexually assaulting and trafficking her. He also participated in that conspiracy with a New Yorker who engaged in intentional acts in furtherance of the conspiracy in New York.

29

However, "at this early [motion-to-dismiss] stage of the litigation, . . . a detailed choice of law analysis" for Marie "would be premature." *Meserole v. Sony Corp. of Am., Inc.*, No. 08 Civ. 8987(RPP), 2009 WL 1403933, at *5 n.6 (S.D.N.Y. May 19, 2009). "[C]hoice-of-law determinations are fact-intensive inquiries," and there are open factual questions about the nexus between Marie's wrongful conduct and New York. *See Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd*., 655 F. App'x 9, 13 (2d Cir. 2016) ("[C]hoice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage."); *see also Speedmark Transp., Inc. v. Mui*, 778 F.Supp.2d 439, 444 (S.D.N.Y. 2011) (noting "the record lacks facts necessary to conduct the context specific 'center of gravity' or 'grouping of contacts' analysis" required).

Again, none of this choice-of-law analysis is necessary because the CVA is a procedural law that governs procedure in New York, not conduct outside of New York. But if this Court were to do a choice-of-law analysis, New York law would still apply to Sutton's claims. The district court never conducted this analysis, applying instead an outdated, overruled doctrine that New York law cannot apply where a plaintiff is injured outside of New York regardless of the nexus to New York and New York's interest in resolution of the claims.

**III.    The District Court Erroneously Required a Prosecutable Violation of New York Penal Law for the CVA to Apply.**

Not only did the district court ignore the longstanding New York rule that the law of the forum governs matters of procedure and misapply the presumption against extraterritoriality, the court also misconstrued the text of the CVA. In response to Sutton's argument that the CVA applies because a substantial part of the wrongful conduct alleged in her complaint occurred in New York, the district court stated that the sexual offense itself must have occurred in New York. J.A. 29-31. The court held that the CVA only revives civil claims that arise from a prosecutable violation of certain New York penal laws, and then reasoned that only conduct that takes place in New York could be prosecuted under New York's penal laws. *Id.* Both premises of that holding are incorrect.

The district court's interpretation of the CVA as requiring a prosecutable violation of New York penal law—rather than as incorporating by reference the forms of abuse described by that penal law—is contradicted by the statutory text, has been rejected by two New York intermediate appellate courts, and is inconsistent with the CVA's remedial purpose. And even if the district court's interpretation were right, it is not grounds for dismissal because it is not apparent from the face of the complaint that the sexual offense against Sutton could not be prosecuted under New York penal law.

31

## A. Nothing in the CVA's text requires that the underlying sexual offense violate New York penal law or occur within New York.

Neither the revival provision of the CVA nor the penal codes it references suggest that the underlying sexual offense must have violated New York penal law or taken place in New York. "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself." *People v. Page*, 149 N.E.3d 905, 911 (N.Y. 2020). The relevant part of the CVA states:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . , every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of *conduct which would constitute a sexual offense as defined in* article one hundred thirty of the penal law committed against a child less than eighteen years of age, . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, . . . is hereby revived.

C.P.L.R. § 214-g (emphasis added).

Nothing in the language of the CVA imposes any geographical limitation on where "conduct that would constitute a sexual offense" takes place. The law only references New York's penal law to define the *type of conduct* that constitutes a sexual offense. Where that conduct occurs may affect whether the perpetrator could be criminally prosecuted under New York's penal law, but it doesn't change the nature of the offense. And nothing in the statutory text suggests that the conduct must constitute a prosecutable violation of New York's penal laws.

32

The final sentence of the CVA's revival provision confirms as much. There, the statute states that the affirmative defense set forth in subdivision one of penal law sections 130.30 and 130.45 shall apply. C.P.L.R. § 214-g. That affirmative defense provides a defendant is not liable for the offense if they were less than four years older than the victim at the time of the act. *See* N.Y. Penal Law §§ 130.30, 130.45. There would be no need for the legislature to expressly incorporate this affirmative defense from the penal law if the revival provision already required a prosecutable violation of the penal law. An interpretation that would "render[] words or clauses"—here, the incorporation of a single affirmative defense provided in the penal law—"superfluous . . . should be rejected" because meaning and effect should be given to every word of a statute." *Mestecky v. City of New York*, 88 N.E.3d 365, 367 (N.Y. 2017). Thus, even if somewhere in the penal law there was a requirement that offenses occur in New York, the CVA did not incorporate that requirement; it borrowed only § 130's description of sexual offense conduct and one particular affirmative defense.

If the New York legislature wanted the CVA to apply only where there was a prosecutable violation of New York penal law, it would have said so. The federal RICO statute, for example, defines "racketeering activity" to include acts that are "indictable" under various criminal laws. 18 U.S.C. § 1961. The New York legislature could have similarly required a predicate criminal offense by stating that

the CVA only revives claims for injuries caused by conduct that "violated" or would have been "indictable under" the enumerated New York penal law provisions.

Absent an express provision in the CVA requiring that there be an underlying *violation* of New York penal law or stating that the sexual offense conduct must occur within New York, this Court should not impose such requirements. Courts are to "read statutes as they are written" and leave any "argument for change . . . to be addressed to the Legislature." *People v. Kupprat*, 160 N.E.2d 38, 40 (N.Y. 1959). They cannot "write a . . . requirement into the [relevant statute] when the text . . . is silent as to such a requirement." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 414 (2d Cir. 2019).

### B. New York appellate courts have expressly rejected the district court's reading of the statute.

The district court's interpretation of the CVA is also contradicted by New York appellate court decisions interpreting the statute. This Court is "guided not only by the language of the statute itself but also by New York courts' interpretation of the statute" because "when interpreting state statutes," such as the CVA, "federal courts defer to state courts' interpretation of their own statutes." *United States v. Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002). Here, New York intermediate appellate courts have rejected the district court's argument that the CVA only applies where there is an underlying prosecutable violation of New York's penal laws.

The district court's interpretation of the CVA was first rejected in *S. H. v. Diocese of Brooklyn*. The district court opinion cites to the trial court decision in *S. H.*, which held that "for the CVA to apply, plaintiff's civil claims would have to allege . . . *a violation* of at least one of four specifically identified sections of the New York Penal Law." *S. H. v. Diocese of Brooklyn*, No. 517999/2019, 2020 WL 4730433, at *3 (N.Y. Sup. Ct. Aug. 14, 2020) (emphasis added), *aff'd on other grounds*, 167 N.Y.S.3d 171 (N.Y. App. Div. 2022); *see also* J.A. 30. On appeal, however, this argument was flatly rejected. The appellate court found that the trial "court's analysis misconstrued the language of the statute." *S. H.*, 167 N.Y.S.3d at 177. It explained:

> [A] close reading of the actual language of the statute evinces that it is not a violation of one of the enumerated penal statutes that is required to trigger the revival of certain civil causes of action, but rather it is 'conduct which would constitute' either a sexual offense as defined in article 130 of the Penal Law, or incest, or use of a child in a sexual performance, as defined in certain sections of the Penal Law (CPLR 214–g). Thus, *we do not find that the territorial limitations imposed by New York's criminal statutes are a proper basis for determining that CPLR. 214–g does not apply extraterritorially*.

*Id.* (emphasis added). In other words, the appellate court expressly rejected the argument that is the basis of the district court opinion, clarifying that no violation of New York penal law is necessary for the CVA to apply.

The appellate court held the same in *Anonymous v. Castagnola*, again rejecting the argument that the CVA requires an underlying sexual offense that

violated New York penal law. In *Anonymous v. Castagnola*, a plaintiff filed suit pursuant to the CVA, alleging her former high school and its employees negligently failed to protect her from sexual assault. *See* No. 2021-06810, 2022 WL 17171356, at *1 (N.Y. App. Div. Nov. 23, 2022). The acts of sexual assault were committed by John Doe, a fellow student in the same grade as the plaintiff. *Id.* The school defendants moved to dismiss, arguing that the CVA "could not be used to revive the causes of action against them because Doe was too young under Penal Law § 30.00 at the time the alleged acts of sexual abuse occurred and, therefore, could not have been held criminally liable for his conduct." *Id.*

The appellate court rejected the argument that there must be a prosecutable violation of the penal law for the CVA to apply. The court explained:

> [W]e find that the plain meaning of the phrase 'conduct which would constitute a sexual offense as defined in [Penal Law article 130]' as used in [the CVA] refers to the conduct described in the enumerated provisions of the Penal Law, and is not limited to those situations in which the conduct would subject the actor to criminal liability. To read the statute as limited to only that conduct for which the actor could be subject to criminal liability, we would have to interpret the language "constitute a sexual offense" to mean "establish a violation," which would require the Court to "legislat[e] under the guise of interpretation."

*Id.* at *2 (citations omitted) (second and fourth alterations in original).

These New York appellate courts' express rejection of the district court's interpretation of the CVA is binding. "As a federal court applying state law," the district court was "generally obliged to follow the state law decisions of state

36

intermediate appellate courts." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005); *see also King v. Ord. of United Com. Travelers of Am.*, 333 U.S. 153, 158 (1948) (holding that when interpreting a question of state law, "federal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise"). Because the district court's interpretation of the CVA is at odds with how New York courts interpret their own statute, this Court should reject it.

### C. The district court's interpretation of the statute undermines the CVA's remedial purpose.

If the lack of textual support and the contrary and controlling New York case law were not enough, the district court's interpretation of the CVA should be rejected because it is inconsistent with the CVA's purpose. In interpreting a statute, courts may "inquire into the . . . purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history." *Matter of Peyton v. N.Y.C. Bd. of Stds. & Appeals*, 164 N.E.3d 253, 258-59 (N.Y. 2020). The CVA aims "to remedy the injustices to survivors of child sexual abuse by extending New York's restrictive statutes of limitations that required most survivors to file civil actions or criminal charges long before they reported or came to terms with their abuse." *S. H.*, 167 N.Y.S.3d at 176.

But the district court's interpretation of the CVA's revival provision would undercut the statute's remedial impact. "None of the legislative history suggests that

37

the Legislature intended to limit revival pursuant to [the CVA] to only those claims and causes of action that are based on conditions suffered as a result of conduct for which the abuser could have been subject to criminal liability." *Anonymous*, 2022 WL 17171356, at *3. Instead, "the legislative history focuses on the harm to victims," *id.* (citing memoranda in support of bill), and reviving claims against "any party whose intentional or negligent acts or omissions are alleged to have resulted in the abuse," Introducer's Mem. in Support, New York Bill Jacket, 2019 S.B. 2440, Ch. 11 at 7. Given the remedial nature of the statute and the broad scope of claims it seeks to revive, the legislature likely did not intend to artificially limit the revival provision to claims for injuries arising out of a sexual offense that was itself subject to criminal liability within New York.

The district court's interpretation would also undermine the CVA's objective of fixing New York's oppressively short statute of limitations. The CVA's revival provision modifies New York's statute of limitations to remedy New York's prior, overly restrictive statute of limitations for child sex abuse claims. *See* 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440); Introducer's Mem. in Support, New York Bill Jacket, 2019 S.B. 2440, Ch. 11 at 7 (recognizing that "New York is one of the worst states in the nation for survivors of child sexual abuse").

As explained in Part I, it well-established that New York's statutes of limitations govern actions, like this one, that are brought in New York by a New

38

York resident, regardless of where the underlying tort arises. *See Stuart*, 158 F.3d at 627; *Shapiro*, 173 N.Y.S.3d at 773-74. If the CVA's revival provision was designed to remedy New York's overly restrictive statute of limitations, then it too should apply to cases brought in New York even if the action arose outside of New York. Because continuing to apply New York's oppressively short statute of limitations to claims arising out of child sexual abuse undermines the very purpose of enacting the CVA, this Court should reject the district court's interpretation.[6]

### D. Even if the CVA only applies where the underlying sexual offense violates New York penal law, that is not grounds for dismissal.

Even if the district court's interpretation of the CVA were right, the court was still wrong to dismiss the complaint. "The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr*, 547 F.3d at 425. "[A] plaintiff ordinarily need neither anticipate, nor plead facts to avoid, a defendant's affirmative defenses at the pleadings stage." *Whiteside v. Hover-Davis*, 995 F.3d 315, 321 (2d Cir. 2021). Such an affirmative defense may be raised in a pre-answer Rule 12(b)(6) motion only where "the defense appears on the face of the complaint"—where the "complaint clearly shows the claim is out of time." *Id.*

---

[6] The fact that the New York legislature intended the CVA to apply to claims like Sutton's is also a reason to find that applying the CVA here would not have any impermissible extraterritorial effect. *See Morgan v. Bisorni*, 475 N.Y.S.2d 98, 100 (N.Y. App. Div. 1984) (considering the purpose of a law and the intent of the legislature in deciding whether application of the law would have an impermissible extraterritorial effect).

It is not "clear from the face of the complaint" that the underlying sexual offense Sutton suffered was not prosecutable under New York Penal Law § 130. In fact, the face of the complaint alleges that the underlying sexual offense *did* violate New York penal law, specifically sections 130.20 (Sexual Misconduct), 130.25 (Rape in the Third Degree), 130.35 (Rape in the First Degree), and 130.65 (Sexual Abuse in the First Degree). J.A. 21-23.

And whether New York would have jurisdiction to prosecute these violations is a fact-intensive question that cannot be determined on the face of the complaint. The common law rule that a state can only exercise jurisdiction over a felony offense completed within its territory "has been supplanted by State statutes broadening the territorial scope of criminal jurisdiction." *People v. Kassebaum*, 744 N.E.2d 694, 697 (N.Y. 2001). In New York, the relevant statute is Criminal Procedure Law § 20.20, which provides jurisdiction where "*an* element of [the] offense" occurred in New York, or where there was "a conspiracy . . . to commit such offense" and the defendant engaged in "conspiratorial . . . conduct. . . within this state." N.Y. Crim. Proc. Law §§ 20.20(1)(a), (c) (emphasis added). For example, in *People v. Carvajal*, the court concluded that New York had jurisdiction to prosecute first degree criminal possession of a controlled substance, even though defendant resided in, and the cocaine was seized in, California because the defendant met with New York cohorts and made calls in furtherance of a conspiracy while in New York. 845 N.E.2d 1225,

40

1226 (N.Y. 2005); *see also People v. Lin*, 718 N.Y.S.2d 312, 313 (N.Y. App. 2000) (determining that "New York had jurisdiction to prosecute [defendant] for the rape and aggravated sexual abuse charges, notwithstanding that the sexual assaults took place in New Jersey").

Based on the facts pleaded in the Amended Complaint, it is plausible that Marie engaged in acts, while in New York, in furtherance of the conspiracy to commit sexual misconduct against Sutton. In fact, it seems quite likely given that he attended meetings at Elite's New York office and routinely preyed on child models at Elite events in New York. *See* J.A. 14-15. But because untimeliness is an affirmative defense, Sutton was not required to plead such facts. That is, Sutton did not need to plead facts that would foreclose an anticipated affirmative defense by Marie. *See, e.g.*, *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) (explaining a plaintiff need not "anticipate potential affirmative defenses, such as the statute of limitations, and . . . affirmatively plead facts in avoidance of such defenses"); *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999) (same) (citing 5 Charles Wright & Arthur Miller, Federal Practice and Procedure § 1276 (2d ed. 1990 & 1999)).

Thus, even if the district court was right that the CVA only applies where the underlying sexual offense violates New York penal law, the court was still wrong to

41

dismiss the complaint because it was not clear, on the face of the complaint, that the sexual offense against Sutton could not be prosecuted under New York penal law.[7]

## IV. The District Court Improperly Dismissed Claims Against Gérald Marie for Lack of Personal Jurisdiction.

The district court mistook the requirement to plead subject matter jurisdiction in a complaint as a requirement to plead personal jurisdiction in a complaint. The court sua sponte dismissed the claims against Marie on the grounds that Sutton did not allege how the court has personal jurisdiction over Marie. *See* J.A. 32-33. But personal jurisdiction is a waivable defense, *see* C.P.L.R. § 3211(e), so the court erred in raising it sua sponte. Moreover, "unlike subject matter jurisdiction, there is no requirement under the Federal Rules of Civil Procedure that a complaint allege facts showing the basis for personal jurisdiction." *Hypefortype Ltd. v. Universal Music Grp., Inc.*, No. 17-CV-4468 (BMC), 2017 WL 11537717, at *1 (E.D.N.Y. Sept. 17, 2017). A "plaintiff has no obligation under Rule 8 to plead any allegations pertaining to personal jurisdiction, and so a complaint cannot inadequately allege the basis for personal jurisdiction." *Parabit Sys., Inc. v. Synergistics, Inc.*, No. 19-CV-888 (BMC), 2019 WL 13078616, at *1 (E.D.N.Y. Apr. 5, 2019); *see also* 4 Charles

---

[7] The proper interpretation of New York statute of limitations and choice-of-law principles, as well as the CVA's revival provision, is clear and mandates reversal. But if this Court disagrees, it should certify the question to the New York Court of Appeals as "an unsettled and significant question of state law that will control the outcome of a case pending before this Court." *Cruz v. TD Bank, N.A.*, 711 F.3d 261, 267 (2d Cir. 2013).

Wright & Arthur Miller, Federal Practice and Procedure § 1067.6 (3d ed. 2007) (collecting cases and noting that "under Federal Rule 8(a) plaintiffs are not required to plead the basis for personal jurisdiction over defendants"). Because no defendant moved to dismiss for lack for personal jurisdiction, Sutton never had the burden to establish the district court's personal jurisdiction over Marie. Accordingly, the district court's dismissal on that ground was legal error.

Nonetheless, Sutton's complaint *did* allege facts to support the district court's personal jurisdiction over Marie. In response to a motion to dismiss for lack of personal jurisdiction, a plaintiff can establish that the court does have personal jurisdiction "by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). The pleadings "are construed in the light most favorable to plaintiff and all doubts are resolved in its favor." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

Personal jurisdiction of a federal court over a non-domiciliary is determined by the law in which the federal court sits. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222-25 (2d Cir. 1963). Here, there are two grounds for exercising personal jurisdiction over Marie pursuant to New York's long arm statute.

43

First, the district court has personal jurisdiction because Marie participated in a conspiracy and his co-conspirator, John Casablancas, performed jurisdictional acts in support of that conspiracy in New York. *See* J.A. 18, 22-23. Section 302(a) of New York's long arm statute provides that a court may exercise jurisdiction over a non-domiciliary who "in person or through an agent" performs jurisdictional acts. C.P.L.R. § 302. "Courts have defined 'agent' broadly to include not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators." *777388 Ontario Ltd. v. Lencore Acoustics Corp*., 142 F. Supp. 2d 309, 318 (E.D.N.Y. 2001).

Accordingly, "[a]cts committed in New York by a co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject that out-of-state defendant to jurisdiction in New York under § 302(a) of the C.P.L.R." *Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.*, No. 95 Civ. 7685, 1996 WL 437907 at *6 (S.D.N.Y. Aug. 2, 1996) (citing *Lehigh Valley Indus., Inc., v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975); *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991); *Singer v. Bell*, 585 F. Supp. 300, 302 (S.D.N.Y. 1984)).

The complaint alleges that Marie was engaged in an unlawful conspiracy with Casablancas, and that Casablancas took overt acts in further of the conspiracy within New York. Specifically, the complaint alleges that the two men "reached an agreement . . . to send 17-year-old Plaintiff to live with Defendant Marie who was

known to Casablancas to be a sex offender," that "Casablancas in fact sent Plaintiff to Marie's apartment in France," that the men "deliberately reached this agreement to further their professional interests as well as their shared interest in sexually abusing child models," and that as a result of this conspiracy, Sutton was repeatedly raped and sexually abused. J.A. 22-23. Because the complaint alleges that Marie participated in a conspiracy and overt jurisdictional acts in furtherance of that conspiracy took place in New York, the district court has personal jurisdiction over Marie.

Second, the court has jurisdiction over Marie because this lawsuit arises from Marie's business transactions within New York. Section 302(a)(1) permits New York to exercise personal jurisdiction over a nondomiciliary "if two conditions are met: first, the nondomiciliary must 'transact business' within the state; second, the claim against the nondomiciliary must arise out of that business activity." *Slapshot Beverage Co. v. S. Packaging Mach., Inc.*, 980 F. Supp. 684, 686 (E.D.N.Y. 1997).

Marie transacted business within New York in two ways. First, he was an executive and partner of Elite Model Management, a modeling company with annual revenues over 100 million dollars and a flagship office in New York. J.A. 9, 12. Marie attended meetings in the New York office and New York Elite Modeling events. J.A. 14-15. Second, he engaged in unlawful business in New York, specifically "sex trafficking child victims from New York," from which he then

45

profited by trafficking them to other men throughout Europe. J.A. 9, 19. Sutton's claims arise from both Marie's professional business relationship with Elite Modeling New York as well as his child sex trafficking enterprise. In both ways, Marie transacted business in New York that led to Sutton's claims, and thus availed himself of the benefits and protections of New York law. Thus, the district court erred in sua sponte dismissing the claims against Marie for lack of personal jurisdiction.

## CONCLUSION

For these reasons, the district court's order dismissing Sutton's complaint should be reversed, and the case should be remanded for additional proceedings.

Respectfully submitted,

December 19, 2022

/s/ Ellen Noble
Ellen Noble
Alexandra Z. Brodsky
Adele P. Kimmel
PUBLIC JUSTICE
1620 L St. NW, Ste. 630
Washington, DC 20036
(202) 797-8600
enoble@publicjustice.net
abrodsky@publicjustice.net
akimmel@publicjustice.net

John Clune
Daniel D. Williams
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
clune@hbcboulder.com
dwilliams@hbcboulder.com


Debra L. Greenberger
EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
600 Fifth Avenue, Tenth Floor
New York, New York 10020
(212) 763-5000
dgreenberger@ecbawm.com


*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and Local Rule 32.1(a)(4)(A) because this brief contains 11,547 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as calculated by Microsoft Word 2016. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a) because this brief has been prepared in proportionally spaced typeface using 14-point Times New Roman font.

/s/ Ellen Noble
Ellen Noble
*Counsel for Appellant*

December 19, 2022

**CERTIFICATE OF SERVICE**

I certify that on December 19, 2022, I electronically filed the foregoing Appellant's Opening Brief via the CM/ECF system and served defendant-appellee Trudi Taspscott or her counsel via CM/ECF. I further certify that a copy of the brief was mailed via U.S. mail to:

Gerald Marie
Diseminado Casa Linda, 25T
Illes Balears, 078389
Spain

/s/ Ellen Noble
Ellen Noble
*Counsel for Appellant*