# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued: May 10, 2023
Decided: November 4, 2024

No. 22-2327

CARRÉ SUTTON,

*Plaintiff-Appellant,*

*v.*

TRUDI TAPSCOTT,

*Defendant-Appellee,*

GÉRALD MARIE, a.k.a. Gérald Marie Castellac,

*Defendant.*[*]

Appeal from the United States District Court
for the Southern District of New York
No. 21-cv-6787, Mary Kay Vyskocil, *Judge.*

Before: CARNEY, SULLIVAN, and LEE, *Circuit Judges.*

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Carré Sutton appeals from a judgment of the United States District Court for the Southern District of New York (Vyskocil, *J.*) dismissing her civil claims against defendants Gérald Marie and Trudi Tapscott, which she brought pursuant to the claim-revival provision of New York's Child Victims Act (the "CVA"), N.Y. C.P.L.R. § 214-g. Sutton alleges that in 1986, shortly after she moved to New York City to work as a child model for Elite Models Management ("Elite"), Tapscott, an Elite executive, sent her to Paris to live with another Elite executive, Marie, who allegedly raped her. While Sutton's claims would ordinarily be time-barred, the CVA temporarily revived certain claims that, like Sutton's, were based on the sexual abuse of a minor. *See* N.Y. C.P.L.R. § 214-g. The district court nonetheless concluded that the CVA did not apply to Sutton's claims because the abuse she suffered occurred outside of New York. That conclusion was erroneous in light of subsequent state-court decisions, which have clarified that the CVA revived claims arising from the out-of-state abuse of children who were residents of New York at the time their causes of action accrued. With respect to Sutton's claims against Marie, who did not appear, the district court dismissed the claims for the additional reason that Sutton had failed to establish that the court had personal jurisdiction over Marie. But the district court provided no notice to Sutton that it would *sua sponte* raise the affirmative defense of personal jurisdiction, nor did it give her an opportunity to plead facts or make arguments establishing personal jurisdiction. We therefore hold that the district court's dismissal of Sutton's claims against Marie for lack of personal jurisdiction was erroneous. Accordingly, we **REVERSE** the judgment of the district court dismissing Sutton's claims as time-barred, **VACATE** the district court's judgment with respect to personal jurisdiction, and **REMAND** the case for further proceedings.

REVERSED AND REMANDED.

ELLEN L. NOBLE (Alexandra Z. Brodsky, Adele P. Kimmel, *on the brief*), Public Justice, Washington, DC; John Clune, Daniel D. Williams, Hutchinson Black and Cook, LLC, Boulder, CO; Debbie Greenberger, Emery Celli Brinckerhoff Abady Ward & Maazel, LLP, New York, NY, *for Plaintiff-Appellant*.

JOSEPH A. D'AVANZO (Alan Silber, Chanel J. Hudson, *on the brief*), Pashman Stein Walder Hayden, P.C., Purchase, NY, *for Defendant-Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Carré Sutton appeals from a judgment of the United States District Court for the Southern District of New York (Vyskocil, *J.*) dismissing her civil claims against defendants Gérald Marie and Trudi Tapscott, which she brought pursuant to the claim-revival provision of New York's Child Victims Act (the "CVA"), N.Y. C.P.L.R. § 214-g. Sutton alleges that in 1986, shortly after she moved to New York City to work as a child model for Elite Models Management ("Elite"), Tapscott, an Elite executive, sent her to Paris to live with another Elite executive, Marie, who allegedly raped her. While Sutton's claims would ordinarily be time-barred, the CVA temporarily revived certain claims that, like Sutton's, were based on the sexual abuse of a minor. *See* N.Y. C.P.L.R. § 214-g. The district court nonetheless concluded that the CVA did not apply to Sutton's claims because the abuse she suffered occurred outside of New York. That conclusion was erroneous in light of subsequent state-court decisions, which have clarified that the CVA revived claims arising from the out-of-state abuse of children who were residents of New York at the time their causes of action accrued. With respect to Sutton's claims against

Marie, who did not appear, the district court dismissed the claims for the additional reason that Sutton had failed to establish that the court had personal jurisdiction over Marie. But the district court provided no notice to Sutton that it would *sua sponte* raise the affirmative defense of personal jurisdiction, nor did it give her an opportunity to plead facts or make arguments establishing personal jurisdiction. We therefore hold that the district court's dismissal of Sutton's claims against Marie for lack of personal jurisdiction was erroneous. Accordingly, we REVERSE the judgment of the district court dismissing Sutton's claims as time-barred, VACATE the district court's judgment with respect to personal jurisdiction, and REMAND the case for further proceedings.

## I. BACKGROUND

In 2021, Sutton filed suit against Marie and Tapscott for fraud, negligence, intentional infliction of emotional distress, and related claims, invoking the claim-revival provision of the CVA. Sutton alleges that in 1986, when she was a sixteen-year-old runaway living in California, Elite recruited her to move to New York City to become a child model. Elite first housed Sutton in an apartment shared with five other young models. Sutton later moved to an apartment belonging to Tapscott, whom Sutton described as the "housemother" for the models. After a

few months, Tapscott told Sutton, then seventeen, that the head of Elite's European agencies, Marie, had chosen Sutton to live with him in Paris, an assignment that Tapscott indicated would further Sutton's career. Sutton alleges that the real reason that she was sent to Paris, however, was to be sexually abused by Marie. Indeed, after Sutton moved into Marie's apartment, Marie allegedly raped her.

The district court found that the CVA was inapplicable to Sutton's claims and therefore granted Tapscott's motion to dismiss them as time-barred. In relevant part, the CVA provides:

> [E]very civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of *conduct which would constitute a sexual offense* as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

N.Y. C.P.L.R. § 214-g (emphasis added).

The district court concluded that "the plain language of the CVA makes clear that it does not apply to conduct that occurred entirely outside of New York."

J. App'x at 29.  It reasoned that section 214-g revived only claims "which would constitute a sexual offense" as defined under New York law, that New York criminal law defines an "offense" as conduct occurring within the boundaries of the state, and that section 214-g therefore "does not apply to conduct that occurred entirely outside of New York." *Id.* (internal quotation marks omitted).  Because Marie's alleged abuse of Sutton occurred outside of New York, the district court dismissed the claims against Marie and against Tapscott as time-barred.  It also *sua sponte* dismissed the claims against Marie for the additional reason that "[Sutton] does not allege how this Court has personal jurisdiction over Defendant Marie, an apparent resident of Spain."  *Id.* at 33.  This appeal followed.

## II.  STANDARDS OF REVIEW

"We review *de novo* a district court's grant of a motion to dismiss, including its legal interpretation and application of a statute of limitations."  *Ray v. Ray*, 22 F.4th 69, 72 (2d Cir. 2021) (internal quotation marks omitted).  In considering questions of state law not yet settled by the New York Court of Appeals, we must predict, if reasonably possible, how the New York Court of Appeals would rule on the question.  *See DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005).  "Although we are not strictly bound" by the decisions of intermediate New York courts, those

decisions are "a basis for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* at 112 (internal quotation marks omitted). "[I]f state law is so uncertain that we can make no reasonable prediction," we must certify the question to the New York Court of Appeals. *Id.* at 111.

With respect to personal jurisdiction, "[w]e review a district court's dismissal of an action for want of personal jurisdiction *de novo*, construing all pleadings and affidavits in the light most favorable to the plaintiff." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (internal quotation marks omitted).

### III. DISCUSSION

**A. The district court erred in concluding that section 214-g does not apply to claims arising from sexual abuse that occurred outside New York.**

Sutton contends that the district court misinterpreted section 214-g in concluding that it did not revive claims arising from sexual abuse that occurred outside of New York. We agree.

As relevant here, section 214-g revives civil claims "alleging intentional or negligent acts or omissions" resulting in "physical, psychological, or other injury

or condition suffered as a result of conduct [that] would constitute a sexual offense as defined in [certain provisions of New York criminal law] committed against a child less than eighteen years of age."  N.Y. C.P.L.R. § 214-g.  By its terms, section 214-g revives claims based on only certain injuries, and it establishes a two-pronged, conjunctive test for what those injuries are.  First, the injury must have been caused by conduct – whether the defendant's or not – that would constitute child sexual abuse as defined under certain provisions of New York criminal law.[1] Second, the intentional or negligent acts or omissions of the defendant must have been a cause of the injury.  Both prongs must be met for section 214-g to apply.

This appeal involves the first prong of the statute.  The district court effectively read the phrase "injury or condition suffered as a result of conduct [that] would constitute a sexual offense as defined in [certain New York criminal statutes]," N.Y. C.P.L.R. § 214-g, to mean injury or condition suffered as a result of conduct that would *be prosecutable* under certain New York criminal statutes.  *See* J. App'x at 29–30 ("The CVA revives claims which would constitute a sexual offense as defined in [New York] penal law." (internal quotation marks omitted)).

---

[1] We use the phrase "sexual abuse" to refer to all conduct listed in section 214-g:  (1) sexual offenses against a child less than eighteen years of age, (2) incest against a child less than eighteen years of age, and (3) the use of a child in a sexual performance.  *See* N.Y. C.P.L.R. § 214-g.

In essence, the district court added a third prong to section 214-g's test for revival: that the conduct giving rise to the injury must have occurred in New York. The district court therefore concluded that section 214-g did not revive claims based on abuse occurring outside New York.

Subsequent decisions by New York intermediate courts make clear that the district court's interpretation of section 214-g was erroneous as a matter of New York law. In *Samuel W. v. United Synagogue of Conservative Judaism*, the First Department explained that "New York's criminal statutes' territorial limitations are . . . not a basis for excluding claims under the CVA" and that section 214-g's "plain language revived 'every' covered 'civil claim or cause of action' that would have been properly brought in New York in the first instance," including claims based on the out-of-state sexual abuse of a plaintiff who "was a New York resident at the time the cause of action accrued." 194 N.Y.S.3d 25, 26–27 (1st Dep't 2023) (quoting N.Y. C.P.L.R. § 214-g); *see also Doe v. Wilhelmina Models, Inc.*, 212 N.Y.S.3d 613, 617 (1st Dep't 2024) (reaching same conclusion). Likewise, the Second Department concluded that a "plaintiff's residence in New York at the time his or her claims or causes of action accrued is sufficient to bring those claims or causes of action within the purview of CPLR 214-g, even where, as here, the wrongful

conduct underlying the New York resident's causes of action occurred out-of-state." *Smith v. Pro Camps, Ltd.*, 210 N.Y.S.3d 173, 175 (2d Dep't 2024). Finally, in *Shapiro v. Syracuse University*, the Fourth Department held that section 214-g revived claims arising from the sexual abuse in Massachusetts of children who were then residents of New York. *See* 173 N.Y.S.3d 769, 773–74 (4th Dep't 2022). In short, three of the four intermediate New York courts have now directly contradicted the district court's holding as to the meaning of section 214-g.

In light of this consensus among the intermediate state courts, and seeing no reason why the New York Court of Appeals would decide otherwise, we are persuaded that the CVA revived claims arising from the out-of-state sexual abuse of minors who were New York residents at the time their causes of action arose. The district court therefore erred in holding that section 214-g does not apply to Sutton's claims simply because the alleged abuse occurred in France.

**B. Sutton plausibly alleged that she was a New York resident at the time her causes of action accrued.**

Tapscott urges us to affirm on the alternative ground that Sutton failed to plead facts that would support a reasonable inference that Sutton was a New York resident at the time she was abused. This argument is premised on the language of New York's borrowing statute – N.Y. C.P.L.R § 202 – which requires

nonresident plaintiffs who bring out-of-state claims to satisfy the statute of limitations of both New York *and* the state where their claims accrued.  *See Dugan v. Schering Corp.*, 86 N.Y.2d 857, 859 (1995) (clarifying that section 202 refers to plaintiff's residency at the time the cause of action accrued); *see also S.H. v. Diocese of Brooklyn*, 167 N.Y.S.3d 171, 183 (2d Dep't 2022) ( "[T]here is no reference to CPLR 202 in CPLR 214-g, nor is there any indication that CPLR 214-g was intended to override the provisions of CPLR 202.").  But we need not detour into French limitations laws here because Sutton sufficiently pleaded that she was a New York resident at the time her claim accrued.

Residence for purposes of section 202 "turns on whether [the plaintiff] has a significant connection with some locality in the State as the result of living there for some length of time during the course of a year."  *Antone v. Gen. Motors Corp., Buick Motor Div.*, 64 N.Y.2d 20, 30 (1984).  Under New York law, a person can have more than one residence.  *See id.* at 28.  To establish residence in a locality in New York, a person "must stay there for some time and have the bona fide intent to retain the place as a residence for some length of time and with some degree of permanency."  *Siegfried v. Siegfried*, 460 N.Y.S.2d 131, 133 (2d Dep't 1983) (internal quotation marks omitted); *see also Antone*, 64 N.Y.2d at 30 (citing *Siegfried* and

explaining that New York's residence test for venue also establishes residence for section 202). "[R]esidence requires more stability than a brief sojourn for business, social[,] or recreational activities." *Fisch v. Davidson*, 165 N.Y.S.3d 85, 89 (2d Dep't 2022) (internal quotation marks omitted). Ultimately, a residence determination is "one of fact." *Antone*, 64 N.Y.2d at 30.

We conclude that Sutton pleaded sufficient facts to support a reasonable inference that she was a resident of New York at the time her cause of action accrued. Sutton alleged that she moved from California to New York in January 1986 for her nascent modeling career, lived in an Elite-provided apartment (and eventually in Tapscott's apartment), and remained in New York until Elite sent her to Paris "on a short-term visa" at some point in the spring of 1986. J. App'x at 8, 18. Sutton further alleged that when she left for Paris, she "fully intended to later return to live in New York and continue her career as a model." *Id.* Accepting all these facts as true, we conclude that Sutton plausibly alleged – at least for purposes of surviving a motion to dismiss – that she was a resident of New York when she was abused in Paris. *See, e.g.*, *Koulajian v. Trek Bicycle Corp.*, No. 90-cv-3156 (LJF), 1992 WL 28884, at *3 (S.D.N.Y. Feb. 11, 1992) (concluding that college

student who spent nine months at school in Indiana and just three months at home in New York was a resident of both Indiana and New York).

### C. Tapscott's remaining alternative grounds for affirmance are unpersuasive.

Tapscott offers four other alternative grounds on which she urges us to affirm all or part of the district court's judgment dismissing Sutton's claims:  (1) that Sutton failed to plead facts that would support a reasonable inference that Tapscott knew or should have known that she was putting Sutton at risk of sexual abuse by sending her – at seventeen years of age – to live with Marie at his apartment in Paris; (2) that Sutton failed to plead sufficiently particular facts under Federal Rule of Civil Procedure 9(b) in support of her assertion that Tapscott intentionally misrepresented the reasons for Sutton's transfer to Paris; (3) that Sutton failed to plead facts that would support a reasonable inference that Tapscott breached a duty of care to Sutton; and (4) that Sutton failed to plead facts that would support a reasonable inference that Tapscott intentionally inflicted emotional distress on Sutton.  When assessing whether a plaintiff has stated a claim, we accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *See Metz v. U.S. Life Ins. Co. in City of N.Y.*, 662 F.3d 600, 602

(2d Cir. 2011). Applying that standard, we are not persuaded by Tapscott's alternative arguments for affirmance.

*First*, although Sutton offered no facts directly demonstrating that Tapscott knew of Marie's history of sexually abusing models when she arranged for Sutton to live with Marie in the spring of 1986, we conclude that Sutton alleged facts that give rise to a reasonable inference that Tapscott had such knowledge. Most significantly, Sutton alleged that Tapscott prepared a memorandum in June 1986 – just a few months after sending Sutton to live with Marie in Paris – regarding Marie's sexual abuse of multiple Elite models. Given the timing and contents of the memo, Sutton's allegations give rise to an inference that Tapscott was aware of Marie's misconduct before she arranged for Sutton to reside with Marie in Paris. Furthermore, Sutton alleged that Tapscott continued to work for Elite after writing her memo, unlike some other executives who left the company because of Marie's misconduct, which, together with Tapscott's alleged warning to Marie a few years later "to leave the 13- and 14-year-old girls alone," support an inference that she was complicit in his abuse of minors employed by Elite. J. App'x at 19. Finally, Sutton alleged that Tapscott was a high-level executive at Elite, that it was widely known in the industry that Marie was a sexual predator, and that, because of

Marie's reputation for sexual misconduct, at least one Elite executive had expressed concerns about him joining Elite in 1985, the year before Tapscott arranged for Sutton to live with him.

Taking these facts as true and considering them together, a reasonable factfinder could infer that Tapscott knew by the spring of 1986 of Marie's reputation for sexually abusing Elite's child models and either knew or should have known that Marie was likely to sexually assault Sutton if she were sent to live with him. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). While Sutton may or may not be able to establish these facts in discovery or carry her burden on summary judgment or at trial, the plausibility standard requires only "enough facts to raise a reasonable expectation that discovery will reveal evidence" that Tapscott knew of Marie's history of sexually abusing models at the time she sent Sutton to live with him in 1986 – a bar that Sutton's complaint narrowly clears here. *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (alterations accepted and internal quotation marks omitted).

*Second*, Sutton alleged with sufficient particularity that Tapscott misrepresented the purpose of her transfer to Europe. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Under Rule 9(b)'s particularity requirement, the plaintiff must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (internal quotation marks omitted).

Here, Sutton alleged that in spring 1986, Tapscott "informed [her] that Elite was transferring her from New York to Paris and [that] she was chosen by the head of Elite in Europe to live in his apartment with him." J. App'x at 17. She further alleged that Tapscott "indicated" to her that "she was being sent to Paris for the purpose of furthering her career." *Id.* at 18. And, according to the complaint, "Tapscott failed to explain Marie's true motives or to warn [her] of Marie's penchant for sexually assaulting underage models." *Id.* at 7. Considering these allegations in combination with the allegation that Tapscott was aware by the

spring of 1986 of Marie's history of abusing young models – which we have already concluded was sufficiently pleaded to survive a motion to dismiss – we conclude that Sutton met the particularity requirement of Rule 9(b).

*Third*, Sutton pleaded facts that support a reasonable inference that Tapscott breached a duty of care to her.  It is true that one New York court recently held that employment of a minor does not, without more, "give rise to the duty" that flows from "assuming physical custody and control over children." *Wilhelmina*, 212 N.Y.S.3d at 625–26 (alterations accepted and internal quotation marks omitted).  But, under New York law, "[a] person not a parent who undertakes a duty to care for or supervise a child is required to use reasonable care to protect the child from harm and may be liable for injury proximately caused by his or her negligence in doing so." *Mary Anne "ZZ" v. Blasen*, 726 N.Y.S.2d 767, 775 (3d Dep't 2001) (concluding that an adult who promised to "keep an eye" on minor children owed a duty of care to those children).  The relationship between two parties may also "create a duty [of care] where it places the defendant in the best position to protect against the risk of harm." *Katz v. United Synagogue of Conservative Judaism*, 23 N.Y.S.3d 183, 184 (1st Dep't 2016) (internal quotation marks omitted).

According to Sutton's complaint, Tapscott was effectively the "housemother for the child models," overseeing their housing, transportation to jobs, and the provision of other basic needs. J. App'x at 10. Indeed, Sutton alleged that she lived in Tapscott's apartment, that Tapscott was responsible for providing her food while she lived there, and that she was generally in debt to Elite due to her low wages. Taking the facts alleged in the complaint as true and drawing all reasonable inferences in Sutton's favor, Tapscott's relationship with Sutton – while not one of "physical custody and control," *Wilhelmina*, 212 N.Y.S.3d at 625 – placed Tapscott "in the best position to protect against the risk of harm" by at least warning Sutton of the risk of moving to Paris to live with Marie, *Katz*, 23 N.Y.S.3d at 184. Assuming the truth of the complaint's allegations, Sutton pleaded sufficient facts to support an inference that Tapscott owed her (and breached) a duty of care.

*Fourth*, the allegations set forth in Sutton's complaint were sufficient to support a reasonable inference that Tapscott intentionally inflicted emotional distress on Sutton. Tapscott contends that the complaint contained "nothing beyond an unsupported conclusory statement that Tapscott's true purpose . . . was to enable Marie's sexual assault on Plaintiff." Tapscott Br. at 29. But New York

law allows an intentional infliction of emotional distress claim to be founded either on a defendant's "intent to cause" severe emotional distress or on the defendant's "disregard of a substantial probability of causing[] severe emotional distress." *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 56 (2016) (internal quotation marks omitted). Drawing every reasonable inference in Sutton's favor, including the inference that Tapscott knew of Marie's sexual abuse of child models yet said nothing of it to Sutton and instead facilitated Sutton's transfer to France to live with Marie, we cannot say that Sutton failed to state a claim for intentional infliction of emotional distress. *See Eskridge v. Diocese of Brooklyn*, 180 N.Y.S.3d 179, 181 (2d Dep't 2022) (holding that intentional infliction of emotional distress claim had been plausibly alleged where complaint alleged that defendants knew of priest's sexual abuse of plaintiff and other children yet concealed abuse and permitted it to continue).

**D. The district court erred in *sua sponte* dismissing Sutton's claims against Marie for lack of personal jurisdiction without providing Sutton with notice or an opportunity to be heard.**

Finally, the district court *sua sponte* dismissed all claims against Marie – who did not appear in this case – for the same reasons that it dismissed the claims against Tapscott and for the independent reason that "[Sutton] does not allege how this Court has personal jurisdiction over Defendant Marie, an apparent resident of

Spain." J. App'x at 33. Because the district court raised the issue of personal jurisdiction without notice to Sutton and without providing her with an opportunity to demonstrate why the court had jurisdiction over Marie, we conclude that the district court's dismissal for lack of personal jurisdiction was error.

A plaintiff need not plead facts in her complaint establishing personal jurisdiction. *See Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 (2d Cir. 1971); *see also* Wright & Miller, *Federal Practice and Procedure* § 1206 & n.25. Instead, a defendant must normally raise personal jurisdiction as a defense, only after which the plaintiff will be required to show that the court has jurisdiction over the defendant. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). A defendant's failure to raise personal jurisdiction may result in the defense being forfeited. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016); Fed. R. Civ. P. 12(h)(1). Accordingly, "a district court should not raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (emphasis omitted).

Nonetheless, we have held that a court may raise the issue of personal jurisdiction *sua sponte* in limited circumstances. For example, "when a defendant declines to appear" and the plaintiff files "a motion for default judgment," we have recognized that a district court "may first assure itself that it has personal jurisdiction over the [non-appearing] defendant." *Id.* We have likewise held that a district court need not wait for the plaintiff's motion for default judgment to inquire into its personal jurisdiction over the non-appearing defendant. In *Sinoying Logistics*, we observed that it was "correct for the [d]istrict [c]ourt – in anticipation of an eventual motion for default judgment – to inquire into its personal jurisdiction over [the defendant] and to order [the plaintiff] to show cause why the complaint should not be dismissed." *Id*. at 214. But, in affirming the district court's dismissal, we emphasized that the district court had "not act[ed] without first giving [the plaintiff] an opportunity to establish that the Court had personal jurisdiction over [the defendant]." *Id.*

Unlike in *Sinoying Logistics*, the district court here dismissed Sutton's claims against Marie for lack of personal jurisdiction *sua sponte,* without giving her notice or an opportunity to establish that the Court had personal jurisdiction. We now hold that such *sua sponte* dismissal was error. Until the district court raised the

issue, Sutton had no burden to plead facts establishing personal jurisdiction.  *See Stirling Homex Corp.*, 437 F.2d at 88.  Yet the district court raised and resolved the issue in a single order, giving Sutton no opportunity to plead such facts, much less argue why they supported personal jurisdiction.  The district court therefore violated our "long-standing general rule . . . that a court may not dismiss an action without providing the adversely affected party with notice and an opportunity to be heard."  *Acosta v. Artuz*, 221 F.3d 117, 124 (2d Cir. 2000).[2]

We note one final issue with the district court's conclusion as to personal jurisdiction.  It is not clear from the record that Marie "decline[d] to appear," *Sinoying Logistics*, 619 F.3d at 213, as the case was dismissed seemingly before he was properly served, *see* Sutton Br. at 14; Dist. Ct. Doc. No. 19-3 (indicating Marie's refusal of Sutton's informal service by email).  Accordingly, the district court's *sua sponte* raising of personal jurisdiction may have been premature, since the case may not have ended in a default judgment at all.  Sutton did not argue this point, so we assume for purposes of this appeal, without deciding the issue, that the district court had the authority to raise personal jurisdiction *sua sponte*.

---

[2] Sutton did allege some facts in support of personal jurisdiction in her complaint, which the district court did not address.

On remand, if Marie declines to appear and the district court anticipates a motion for default judgment, the district court should order Sutton to show cause why her claims against Marie should not be dismissed for lack of personal jurisdiction. Only if Sutton fails to make such a showing should the district court dismiss her claims for lack of personal jurisdiction.

## IV. CONCLUSION

In sum, we hold that:

(1) the district court erred as a matter of New York law in concluding that C.P.L.R. § 214-g did not revive claims based on the out-of-state sexual abuse of a New York resident child;

(2) Sutton plausibly alleged that she was a New York resident at the time she was abused in France;

(3) Sutton plausibly alleged that Tapscott knew by the spring of 1986 of Marie's reputation for sexually abusing Elite's child models and either knew or should have known that Marie was likely to sexually abuse Sutton if she was sent to live with him;

(4) Sutton pleaded with sufficient particularity for purposes of Federal Rule of Civil Procedure 9(b) that Tapscott misrepresented the purpose of her transfer to Europe;

(5) Sutton alleged facts that support a reasonable inference that Tapscott had and breached a duty of care to her;

(6) Sutton's complaint set forth allegations sufficient to support a reasonable inference that Tapscott intentionally inflicted emotional distress on

Sutton through her disregard of a substantial probability of causing severe emotional distress; and

(7) the district court erred in *sua sponte* dismissing Sutton's claims against Marie – a non-appearing defendant – for lack of personal jurisdiction, without giving Sutton notice and an opportunity to establish the court's personal jurisdiction.

Accordingly, we **REVERSE** that part of the district court's judgment that dismisses Sutton's claims as time-barred, **VACATE** the district court's judgment with respect to personal jurisdiction, and **REMAND** the case for further proceedings consistent with this opinion.